2023 IL App (1st) 221029-U

FIFTH DIVISION
November 17, 2023

No. 1-22-1029

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 13 CR 14110 |
| | ) | |
| KERWINN CROSS, | ) | Honorable |
| | ) | Kenneth J. Wadas, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE MIKVA delivered the judgment of the court.
Presiding Justice Mitchell and Justice Navarro concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Defendant's 50-year sentence is affirmed where the trial court properly weighed his rehabilitative potential against the factors in aggravation, the seriousness of the offense, and the need to protect the public.

¶ 2    Following a jury trial, defendant Kerwinn Cross was convicted of attempted aggravated criminal sexual assault with a dangerous weapon (720 ILCS 5/8-4, 11-1.30(a)(1) (West 2012)), aggravated criminal sexual assault with a dangerous weapon (720 ILCS 5/11-1.30(a)(1) (West 2012)), aggravated kidnapping committed during the course of a felony (720 ILCS 5/10-2(a)(3) (West 2012)), and aggravated criminal sexual abuse (720 ILCS 5/11-1.60(d) (West 2012)). The trial court sentenced Mr. Cross to a total of 70 years in prison. On direct appeal, this court vacated

Mr. Cross's conviction for aggravated criminal sexual abuse under the one-act, one-crime rule, and vacated two prior convictions for unlawful use of a weapon by a felon (UUWF) and aggravated unlawful use of a weapon (AUUW) under *In re N.G.*, 2018 IL 121939. *People v. Cross*, 2019 IL App (1st) 162108, ¶ 3. We affirmed Mr. Cross's other convictions and remanded for resentencing because the State referenced the vacated convictions at sentencing in aggravation. *Id.* ¶¶ 202, 206.

¶ 3        Following a new sentencing hearing on remand, the court imposed prison terms of 15 years for the aggravated kidnapping and 35 years for the aggravated criminal sexual assault, to be served consecutively, and 10 years for the attempted aggravated criminal sexual assault, to be served concurrently. Mr. Cross now appeals, contending that his aggregate 50-year sentence is excessive because he provided evidence of his rehabilitation and, therefore, his sentence violates the purpose and spirit of the law. We affirm.

¶ 4                                 I. BACKGROUND

¶ 5        As reflected in our prior order, Mr. Cross's charges concerned the assault of C.C. on June 25, 2013. In this order, we only include facts relevant to the issue on appeal.

¶ 6        C.C. testified that on the night before her 16th birthday, she was walking to a gas station and "got stopped" by a vehicle. *Id.* ¶ 8. The passenger, whom C.C. identified as Mr. Cross in court, introduced himself as "Cool" and asked if she wanted to smoke marijuana. *Id.* C.C. entered the vehicle and Mr. Cross eventually transported her to his house, where he choked, smacked, and vaginally raped her. *Id.* ¶ 10. Mr. Cross attempted to have anal sex with C.C., while saying, "say yes to daddy." *Id.* After the rape, Mr. Cross held her at knifepoint, "put" her in his vehicle, and drove a few blocks before pushing her out of the vehicle. *Id.* ¶ 11.

¶ 7        The State also presented evidence of Mr. Cross's other crimes, not charged in this case, through the testimony of N.L. and L.F.

¶ 8    N.L. testified that she was 16 years old on June 22, 2013. *Id.* ¶ 26. That day, she was walking to a bus stop when a vehicle made a U-turn. *Id*. A woman in the vehicle said that her brother wanted to speak with N.L. *Id.* The brother, whom N.L. identified as Mr. Cross, exited the vehicle and introduced himself as "Star." *Id.* N.L. asked Mr. Cross to take her to her residence, and Mr. Cross agreed. *Id*. N.L. entered the vehicle, and Mr. Cross eventually transported her to his residence, where he choked her, hit her, and vaginally raped her. *Id.* ¶ 27. Mr. Cross unsuccessfully attempted to have anal sex with N.L. and told her that "he was [her] daddy." *Id.* The woman from the vehicle also sexually assaulted her. *Id.* ¶ 29.

¶ 9    L.F. testified that on June 20, 2013, while she was in a restaurant, Mr. Cross introduced himself as "Star" and offered her a ride. *Id.* ¶ 32. L.F. entered Mr. Cross's vehicle, and he eventually transported her to his residence, where he choked, slapped, spit on, and vaginally raped her. *Id.* ¶ 33. Mr. Cross also attempted to have anal sex with her. *Id.* Mr. Cross told her to call him "Papi." *Id.* When L.F. tried to leave the residence, Mr. Cross pushed her down a flight of stairs and into the basement, where there were "really big dogs." *Id.* ¶ 34. He told the dogs "to get" L.F., but she fled through a back door. *Id.*

¶ 10    Mr. Cross testified that he had consensual sex with all three women. *Id.* ¶¶ 38-43.

¶ 11    The jury found Mr. Cross guilty of aggravated criminal sexual abuse, and two counts each of aggravated criminal sexual assault, attempted aggravated criminal sexual assault, and aggravated kidnapping. The trial court merged the aggravated kidnapping counts together, the aggravated criminal sexual assault counts together, and the attempted aggravated criminal sexual assault counts together. The court imposed prison terms of 15 years for the aggravated kidnapping, 35 years for the aggravated criminal sexual assault plus a 10-year weapon enhancement, 10 years for the attempted aggravated criminal sexual assault, and 7 years for the aggravated criminal sexual

abuse. The sentences were to run consecutively except for the aggravated criminal sexual abuse sentence, which was to run concurrently.

¶ 12     On direct appeal, this court vacated Mr. Cross's conviction for aggravated criminal sexual abuse under the one-act, one-crime rule, and vacated two prior UUWF and AUUW convictions under *In re N.G.*, 2018 IL 121939. *Cross*, 2019 IL App (1st) 162108, ¶ 3. We affirmed Mr. Cross's other convictions and remanded for resentencing because, at sentencing, the State referred to the vacated convictions in aggravation. *Id.* ¶¶ 202, 206.

¶ 13     At resentencing on May 3, 2022, the presentence investigation report (PSI) from February 9, 2016, was resubmitted to the court. The PSI reflected that Mr. Cross, age 37 on the date of resentencing, was adjudicated delinquent of possession of a stolen motor vehicle in 1998. As an adult, Mr. Cross was convicted of possession of cannabis in 2008 and soliciting unlawful business in 2006. The PSI still referenced the UUWF and AUUW convictions that we vacated as part of Mr. Cross's first appeal, but there is no suggestion that these played any role in Mr. Cross's current sentence.

¶ 14     The PSI also referenced that Mr. Cross had pending cases for aggravated kidnapping, aggravated criminal sexual assault, and aggravated criminal sexual abuse (case number 13 CR 14111); aggravated criminal sexual assault (case number 13 CR 01000); and aggravated kidnapping and aggravated criminal sexual assault (case number 13 CR 14113).

¶ 15     In the PSI, Mr. Cross reported being sexually assaulted from ages 5 to 11 by older male cousins. Mr. Cross denied having substance abuse issues and expressed that he regretted his past crimes. Mr. Cross also reported having a good relationship with his four children and denied any domestic violence between him and their mothers. He earned his high school diploma and "a few" college credits while incarcerated.

¶ 16    In aggravation, retired Chicago police detective Johnnie Minter-Edwards testified regarding an investigation of an alleged aggravated criminal sexual assault in April 2009. The victim, M.S., informed Detective Minter-Edwards that she was an acquaintance of Mr. Cross. While in Mr. Cross's vehicle, Mr. Cross punched and sexually assaulted her vaginally, anally, and orally. Mr. Cross ordered her to "lick his anus." Mr. Cross's DNA matched the anal swabs taken from M.S. During the investigation, Mr. Cross reported using the nickname "Star." These allegations resulted in criminal charges.

¶ 17    Detective Minter-Edwards also investigated an alleged criminal sexual assault against another victim, A.W., in February 2009. A.W. informed Detective Minter-Edwards that she was walking down the street when Mr. Cross offered her a ride. While A.W. was in Mr. Cross's vehicle, he requested sex and A.W. refused. Mr. Cross then sexually assaulted her vaginally. Mr. Cross's DNA matched A.W.'s vaginal swabs. The parties stipulated that M.S. "initially refuse[d] to prosecute" and incorrectly named Mr. Cross as the father of her child.

¶ 18    The State published a 2016 victim impact statement from C.C., who stated that she had not been the same since the rape. She did not go outside until approximately a year later because she was "embarrassed, scared, terrified, miserable, and more." Every year, her birthday causes her to cry.

¶ 19    In mitigation, defense counsel published a letter from Nicole Ramel, a licensed clinical professional counselor who treated Mr. Cross from 2016 to the summer of 2020 at Stateville Correctional Center. Ms. Ramel explained that Mr. Cross was raised by his mother and never knew his father. Mr. Cross witnessed men physically and verbally abuse his mother, so he thought that men were supposed to treat women in that manner. He developed a personality disorder and trauma responses, but had since learned that "his behavior was negative in nature" and developed insight

into his "behavior and communication." Ms. Ramel stated that Mr. Cross, "if given the time and opportunity, has the ability to show remorse for his actions," and with "continued mental health care," Mr. Cross would continue to gain insight into his behaviors and be a "positive member of society."

¶ 20    Defense counsel published a letter from Mr. Cross's mother, who requested that the court have mercy on Mr. Cross. Defense counsel also presented a certificate for Mr. Cross from New Life Corrections Ministry for a "transforming incarcerated dads two-day seminar."

¶ 21    Finally, defense counsel published a letter written by Mr. Cross. Mr. Cross addressed C.C., apologizing and stating that he projected his hate for himself onto the world and "wasn't a woman hater." He thanked her for "standing up as a woman and forcing [him] to change." Mr. Cross also addressed the court, writing that he wished he had sought counseling earlier. He wrote that he spoke with "young men on that road to self-destruction" and informed them that things they were taught as young men regarding their "perceptions and dealings with women" were wrong.

¶ 22    The court began by confirming the sentencing ranges with the parties. The court expressed its view that imposing consecutive sentences was discretionary unless the court found consecutive sentences necessary to protect the public. The court then asked Mr. Cross if he wanted to add anything. Mr. Cross responded that he was raised by a "loving mother who did her best for [him]," and "[n]o one is to blame for the person [he] was but [him]self."

¶ 23    When imposing sentence, the court stated that it had "reassessed" its original evaluations of the case and "reconsidered" the aggravating and mitigating factors. The court acknowledged "some new mitigation" that was not presented at the original sentencing hearing. The court stated that it considered Mr. Cross's written statement and verbal allocution, the PSI, and all factors in aggravation and mitigation, including Mr. Cross's rehabilitative potential. While the mitigation

evidence showed "some rehabilitation," there were multiple instances of "violent sexual assault" against different women. The court emphasized that the "public still need[ed] to be protected from" Mr. Cross, and imposed 15 years in prison for the aggravated kidnapping during the course of a felony and 25 years plus 10 years for the aggravated criminal sexual assault with a dangerous weapon, to be served consecutively. The court also imposed 10 years for the attempted aggravated criminal sexual assault, to be served concurrently, for an aggregate prison term of 50 years.

¶ 24 Mr. Cross filed a motion to reconsider his sentence which was denied.

¶ 25 II. JURISDICTION

¶ 26 The trial court denied Mr. Cross's motion to reconsider his sentence on June 29, 2022. He timely filed his notice of appeal on that same day. We have jurisdiction over this appeal under article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rules 603 (eff. Feb 6, 2013) and 606 (eff. July 1, 2017), governing appeals from final judgments in criminal cases.

¶ 27 III. ANALYSIS

¶ 28 On appeal, Mr. Cross argues that his 50-year sentence is excessive because he provided evidence of his rehabilitation and low recidivism risk, and therefore, his sentence, which he argues means that he will likely die in prison, violates the purpose and spirit of the law. Mr. Cross argues that the other crimes the trial court relied on are not unusual in sexual assault cases, while the evidence of rehabilitation in Ms. Ramel's letter and in Mr. Cross's own statement support a shorter sentence.

¶ 29 A sentencing court shall impose a sentence reflecting both "the seriousness of the offense" and "the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. The court is given broad discretion when imposing sentence, and great deference is given to the

imposed sentence. *People v. Elizondo*, 2021 IL App (1st) 161699, ¶ 112. Such deference is appropriate because the sentencing court is in the better position to evaluate the defendant's credibility, habits, demeanor, social environment, mentality, and moral character. *People v. Boyd*, 2021 IL App (1st) 182584, ¶ 75.

¶ 30     When a defendant challenges a sentence within the statutory range for the offense, the reviewing court will not disturb the sentence absent an abuse of discretion. *People v. Charleston*, 2018 IL App (1st) 161323, ¶ 16. In the sentencing context, we will find an abuse of discretion where a sentence is "greatly at variance with the spirit and purpose of the law" or "manifestly disproportionate to the nature of the offense." *Id.*

¶ 31     After reviewing the record on appeal, we cannot find that Mr. Cross's 50-year sentence constitutes an abuse of discretion. The jury found Mr. Cross guilty of aggravated criminal sexual assault with a dangerous weapon, a Class X felony, which subjected him to a non-extended term of 6 to 30 years and an extended term of 30 to 60 years, not including a mandatory weapon enhancement of 10 years. See 730 ILCS 5/5-4.5-25 (West 2012); 720 ILCS 5/11-1.30(a)(1), (d) (West 2012). The convictions for aggravated kidnapping during the course of a felony (720 ILCS 5/10-2(a)(3) (West 2012)) and attempted aggravated criminal sexual assault with a dangerous weapon (720 ILCS 5/8-4, 11-1.30(a)(1) (West 2012)), Class X felonies, subjected Mr. Cross to prison terms of 6 to 30 years and 4 to 15 years, respectively. 720 ILCS 5/8-4(c)(2) (West 2012) ("the sentence for attempt to commit a Class X felony is the sentence for a Class 1 felony"); 730 ILCS 5/5-4.5-25, 5-4.5-30 (West 2012). At resentencing, the court imposed 25 years plus a 10-year weapon enhancement for the aggravated criminal sexual assault, 15 years for the aggravated kidnapping, and 10 years for the attempted aggravated criminal sexual assault. Mr. Cross's sentences are within the statutory sentencing ranges and are presumed proper unless Mr. Cross

affirmatively shows otherwise. *People v. Knox*, 2014 IL App (1st) 120349, ¶ 46.

¶ 32    Mr. Cross relies heavily on the letter provided by Ms. Ramel, who wrote that Mr. Cross had learned his behaviors were "negative in nature," developed insight into his behaviors and communication, and with "continued mental health care," he would continue to gain insight into his behaviors and be a "positive member of society." While this is certainly compelling evidence, the record here does not demonstrate that the court failed to consider it in imposing this sentence.

¶ 33    When imposing a sentence, the trial court must consider all relevant factors in mitigation and aggravation but need not articulate how it weighed or balanced the factors. *People v. Pittman*, 2014 IL App (1st) 123499, ¶ 24. The record demonstrates that the sentencing court expressly considered Mr. Cross's rehabilitative potential and balanced it against the evidence in aggravation before imposing the sentence. The court specifically noted that Mr. Cross showed "some rehabilitation," but also acknowledged evidence that Mr. Cross had committed multiple violent sexual assaults on different women, noting the seriousness of the offenses. See *People v. Vega*, 2018 IL App (1st) 160619, ¶ 68 (the seriousness of the offense is the most important sentencing factor, not the mitigating evidence). The court emphasized that the public needed to be protected from Mr. Cross. See *People v. Sims*, 403 Ill. App. 3d 9, 24 (2010) (the need to protect the public may outweigh mitigating factors and rehabilitative potential). Furthermore, when denying Mr. Cross's motion to reconsider his sentence, the court explained that after it considered the new mitigating evidence, it made "substantial concessions" to the original sentence.

¶ 34    Moreover, while Mr. Cross argues that Ms. Ramel's letter demonstrates his low recidivism risk, Ms. Ramel did not address whether Mr. Cross would reoffend. Ms. Ramel opined that with "continued mental health care," Mr. Cross would continue to gain insight into his behaviors and be a "positive member of society." Ms. Ramel's letter, however, also indicates that Mr. Cross was

not in treatment with her at the time of resentencing. This record simply does not demonstrate that the trial court abused its discretion in how it balanced Mr. Cross's rehabilitative potential and the relevant mitigating and aggravating factors when imposing the 50-year sentence.

¶ 35    Finally, Mr. Cross cites several law review articles that discuss studies regarding the recidivism rate of offenders as they age, which, he argues, favors a reduced sentence in his case. These articles were not before the trial court, however, and this court will not consider them for the first time on appeal. See *People v. Mehlberg*, 249 Ill. App. 3d 499, 531 (1993) (a reviewing court "will not take judicial notice of critical evidentiary material not presented in the court below," particularly regarding evidence "which may be significant in the proper determination of the issues between the parties").

¶ 36    Mr. Cross is essentially asking this court to rebalance the mitigating and aggravating factors and substitute our judgment for that of the trial court, which we cannot do. *People v. Kindle*, 2021 IL App (1st) 190484, ¶ 67. The trial court considered the seriousness of the offense, Mr. Cross's rehabilitative potential, and the need to protect the public. The imposed sentence was not greatly at variance with the purpose and spirit of the law or disproportionate to the seriousness of the offense. *Charleston*, 2018 IL App (1st) 161323, ¶ 16. The record simply does not demonstrate that the trial court abused its discretion in imposing this sentence.

¶ 37                                   IV. CONCLUSION

¶ 38    For the foregoing reasons, the judgment of the trial court is affirmed.

¶ 39    Affirmed.